J-S40023-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| MIKIEL  WILMER | : | |
| | : | |
| Appellant | : | No. 313 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 26, 2017
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0000369-2014,
CP-51-CR-0000373-2014

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED JANUARY 06, 2021**

Appellant, Mikiel Wilmer, appeals from the judgment of sentence
entered in the Philadelphia County Court of Common Pleas, following his
consolidated jury trial convictions for aggravated indecent assault of a child,
endangering the welfare of children ("EWOC"), unlawful contact with a minor,
simple assault, indecent assault of a child under the age of 13, and corruption
of minors ("COM").[1]  We affirm Appellant's convictions, but we vacate the
judgment of sentence and remand with instructions.

In its opinion, the trial court sets forth the relevant facts of this case as

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3125(b); 4304; 6318; 2701; 3126(a)(7); and 6301,
respectively.

follows:

This case arises from an incident that occurred when the complainants, twin sisters S.S. and N.S., were five years old.[1] On the evening in question, S.S. and N.S. stayed the night at the home [of] Appellant, their maternal uncle. After washing up, the two girls went to bed on two twin beds that had been pulled together.

> [1] S.S. and N.S. were born in May 2005.

After falling asleep, S.S. awoke to find Appellant rubbing her butt. S.S. testified that she was scared so she pushed him and started kicking him off. Appellant, however, "kept trying to get back" and tried to touch her butt 3 to 4 times.

Appellant then went to her sister, N.S.[2] and placed his finger in N.S.'s vagina. S.S. tried to stop Appellant by pushing him off of N.S. and saying, "no stop." S.S. also told Appellant that she was going to tell her mom (Appellant's sister).

> [2] N.S. suffers from a speech disability and was mentally challenged and thus, was unable to testify at trial.

Appellant, however, indicated he didn't care and smacked her. S.S. then laid down and cried and ended up falling asleep.

The above events went unreported until S.S. disclosed the events to her mother, [T.W.], when she was 7-years-old. [T.W.] was speaking to S.S. about, "why they had to be careful out [there] because there [are] dangerous people," to which S.S. responded, "[yeah], dangerous people like [U]ncle Mickey." S.S. then related that "day that you left us over there, he made us go to bed with just our t-shirts on. And then…he woke me up, touching my butt." S.S. told [T.W.] that, "she had to fight him off her. She pushed him off her and he kept trying and then he turned over and put his hands in [N.S.]" S.S. stated that, "As [she] tried to stop [Appellant], he started smacking her and then she went until she couldn't fight [any] more. She just heard screaming and crying from N.S. She was just so scared, she went back to sleep because [Appellant] said he was

going to F her up."

> [T.W.] subsequently made an attempt to meet Appellant but he failed to appear. She did not report the matter right away because she did not know Appellant's whereabouts. However, after speaking with her sister, [she] reported the matter to the police.

(Trial Court Opinion, filed November 19, 2019, at 3-5) (internal record citations omitted).

Following a consolidated trial, a jury convicted Appellant at CP-51-CR-0000369-2014 (victim N.S) of one count each of aggravated indecent assault of a child, EWOC, COM, and unlawful contact with a minor. At docket CP-51-CR-0000373-2014 (victim S.S), a jury convicted Appellant of one count each of EWOC, simple assault, indecent assault of a victim under 13, COM, and unlawful contact with a minor. On January 26, 2017, the court imposed an aggregate sentence of 159 to 318 months' imprisonment, plus ten (10) years' reporting probation. The court further ordered Appellant to comply with the "Tier III" conditions under "Megan's Law."

On Monday, February 6, 2017, Appellant timely filed post-sentence motions, which were denied by operation of law on June 6, 2017. On September 12, 2018, Appellant filed a counseled petition seeking reinstatement of his direct appeal rights *nunc pro tunc*. The court treated the petition under the Post Conviction Relief Act at 42 Pa.C.S.A. §§ 9541-9546, and it reinstated Appellant's direct appeal rights *nunc pro tunc* on January 25, 2019. That same day, Appellant filed separate notices of appeal *nunc pro tunc*

at each underlying docket, listing both docket numbers on each notice of appeal.

On September 9, 2019, the court ordered Appellant to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Appellant filed a preliminary Rule 1925(b) statement on September 30, 2019, explaining he had yet to receive all transcripts. Appellant also filed a request for an extension of time to file a supplemental Rule 1925(b) statement upon receipt of all transcripts. The court granted the request for an extension, and Appellant filed his supplemental Rule 1925(b) statement on October 17, 2019.

Appellant raises the following issues for our review:

> Should not this Court address the merits of Appellant's appeal where he filed one timely appeal for each docket, CP-51-CR-0000369-2014 and CP-51-CR-0000373-2014, and the docket numbers represent convictions from one trial involving two complainants before a jury and one judgment of sentence imposed upon Appellant by the trial judge?
>
> Was not the evidence insufficient to convict Appellant of unlawful contact with [a] minor, 18 Pa.C.S. § 6318, for both juvenile complainants, N.S. and S.S., where the Commonwealth failed to establish the element of contact as required under the statute?
>
> Did not the trial court improperly impose a lifetime reporting requirement upon Appellant pursuant to SORNA whereby life registration violates the Pennsylvania and Federal Constitutions?

(Appellant's Brief at 3).

In his first issue, Appellant asserts that he filed separate, timely notices of appeal for each of the underlying trial court docket numbers. Appellant

avers the notices of appeal were e-filed *nunc pro tunc* on January 25, 2019, and each notice of appeal contained both trial court docket numbers at issue. Appellant emphasizes that the trial court consolidated the charges at each docket number for trial and sentencing, and the docket numbers are related to a single incident involving two complainants. Under these circumstances, Appellant concludes this Court should not quash the appeal pursuant to **Commonwealth v. Walker**, 646 Pa. 456, 185 A.3d 969 (2018). We agree.

"Where … one or more orders resolves issues arising on more than one docket or relating to more than one judgment, separate notices of appeal must be filed." Pa.R.A.P. 341, *Note* (citation omitted). On June 1, 2018, the Pennsylvania Supreme Court decided **Walker** and emphasized, "[t]he Official Note to Rule 341 provides a bright-line mandatory instruction to practitioners to file separate notices of appeal." **Walker, supra** at 467, 185 A.3d at 976-77. This Court has recently explained that:

> Rule 341 and **Walker** make no mention of case numbers on a notice of appeal. To be sure, the error in **Walker** was the filing of a single notice of appeal affecting multiple cases and several defendants. The bright-line rule set forth in **Walker** only required an appellant to file a "separate" notice of appeal for each lower court docket the appellant was challenging.

**Commonwealth v. Johnson**, 236 A.3d 1141 (Pa.Super. 2020) (*en banc*).

Instantly, Appellant properly filed a separate notice of appeal for each trial court docket he now challenges on appeal. On this record, Appellant has complied with the mandates of **Walker**, and we proceed to address the merits

of his remaining claims on appeal.  *See id.*

In his second issue, Appellant alleges the Commonwealth failed to establish the element of "contact" as required to support his convictions for unlawful contact with a minor.  Regarding the conviction related to N.S., Appellant argues he never "communicated" with N.S. prior to the incident. With respect to S.S., Appellant acknowledges that he slapped and threatened her, but he insists that such contact was not the type of communication prohibited under Section 6318.  Moreover, Appellant contends that Section 6318 prohibits contact with a minor for the purpose of engaging in specifically enumerated sexual offenses.  Appellant maintains that simple assault, for which he was convicted, is not one of the enumerated offenses.  Appellant concludes the Commonwealth presented insufficient evidence to support his convictions for unlawful contact with a minor.  We disagree.

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every

- 6 -

element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Jackson*, 215 A.3d 972, 980 (Pa.Super. 2019) (quoting

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal*

*denied*, 613 Pa. 642, 32 A.3d 1275 (2011)).

The Pennsylvania Crimes Code defines the offense of unlawful contact with a minor, in relevant part, as follows:

### § 6318. Unlawful contact with minor

**(a)  Offense defined**.—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1)  Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

* * *

**(c)  Definitions**.—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

* * *

"Contacts."  Direct  or  indirect  contact  or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or

- 7 -

communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318.

The crime of unlawful contact with a minor focuses on communication, verbal or non-verbal, and does not depend upon the timing of the communication. **Commonwealth v. Davis**, 225 A.3d 582, 587 (Pa.Super. 2019). It does not matter whether the communication occurred at the outset of or contemporaneously with the contact; once the communicative message is relayed to a minor, the crime of unlawful contact is complete. **See Commonwealth v. Rose**, 960 A.2d 149, 152-53 (Pa.Super. 2008), *appeal denied*, 602 Pa. 657, 980 A.2d 110 (2009). "Even though the statute is entitled 'unlawful contact with a minor,' it is best understood as 'unlawful communication with a minor.' By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes." **Id**.

In **Commonwealth v. Velez**, 51 A.3d 260 (Pa.Super. 2012), this Court addressed the type of communication or contact necessary to sustain a conviction for unlawful contact. There, a woman found the defendant molesting her daughter, who was "lying on the bed, nude from the waist down, with her knees up and defendant's head between her legs." **Id.** at 262. The defendant argued that the element of "contact" had not been met because no evidence had been admitted of a verbal communication between him and the victim. Further, the defendant claimed that he did not contact the victim via

a communicative message, and his physical touching of the victim by itself was not the type of contact contemplated by the statute. On review, this Court concluded that, despite the lack of evidence of overt verbal communication, it was reasonable to infer that the defendant communicated with the victim, either nonverbally or verbally, to assume the position in which her mother found her. *Id*. *See also Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015) (explaining jury could infer that defendant engaged in nonverbal communication with complainant for purposes of sexual contact by intentionally remaining silent when complainant knocked on bathroom door, thus causing complainant to walk in on defendant while he was naked).

Instantly, Appellant communicated with both N.S. and S.S. several times before initiating the assaults. Specifically, Appellant gave both N.S. and S.S. t-shirts to wear to bed, and he did not provide either child with pants or underwear. (*See* N.T. Trial, 10/18/16, at 49). S.S. explained that it was not typical for the sisters to sleep in t-shirts only. (*Id.* at 48). Appellant positioned two beds together so N.S. and S.S. could sleep next to each other, which provided him with access to both girls simultaneously. (*Id.* at 50). When S.S. awoke, Appellant was touching and rubbing her bare-skinned buttocks with his hands. (*Id.* at 52). Shortly after this assault on S.S., Appellant initiated an assault on N.S.'s bare genitalia. (*Id*. at 53). Even absent evidence of any overt verbal communication, it was reasonable to infer that Appellant communicated with N.S and S.S., either nonverbally or

verbally, instructing them about where to sleep and what to wear. ***See Velez, supra***.

Additionally, regarding Appellant's threats to S.S., the trial court stated:

> The intent of the communication was to facilitate the assault on N.S. and to foster a sense of hopelessness in S.S. that would cause her to stop her efforts to help her sister and to refrain from reporting the crime. The communications unfortunately achieved their purpose since S.S. stopped her efforts on behalf of her sister and lay down crying. Following [Appellant's] communications, she refrained from reporting the incident for nearly two years.

(Trial Court Opinion at 7). We agree that Appellant's threats allowed him to further his goal of his sexual assault on N.S.

Appellant clearly communicated to S.S. with verbal threats designed to prevent her from informing her mother about the sexual assault. For instance, after S.S. observed Appellant digitally penetrate N.S.'s vagina, S.S. attempted several times to stop his sexual assault. (***See*** N.T. Trial, 10/18/16, at 111). Specifically, S.S. tried to push Appellant away from N.S., while telling him "No," and "Stop." (***Id***. at 54). In response, Appellant "smacked" her in the face multiple times and stated that "he would F her up." (***Id.*** at 55, 111). When S.S. threatened to tell her mother, Appellant replied, "I don't care." (***Id***. at 56). Here, Appellant communicated threats to S.S. to facilitate his sexual assault on N.S. Further, these threats created a sense of hopelessness in S.S., causing her to cease efforts to help her sister and refrain from immediately reporting this assault. Thus, Appellant's communications with S.S. were for the purpose of carrying out his sexual acts. ***See Rose, supra***

at 152-53. Based upon the foregoing, the Commonwealth produced sufficient evidence to support Appellant's convictions for both counts of unlawful contact with a minor. *See Jackson, supra*; 18 Pa.C.S.A. § 6318. Therefore, Appellant is not entitled to relief on his second issue.

In his third issue, Appellant alleges the court erred by imposing lifetime reporting requirements under the Tier III conditions of the Sexual Offender Registration and Notification Act ("SORNA").[2] (Appellant's Brief at 18). Appellant avers that the imposition of such registration requirements violates the *ex post facto* clause of the Pennsylvania Constitution. Further, Appellant acknowledges that requirements of the amended Act 29 of SORNA II Subchapter I are currently applicable to him, but he contends they are unconstitutional because they are punitive. We disagree.

SORNA I took effect on December 20, 2012. *See* 42 Pa.C.S.A. §§ 9799.10-9799.41. In 2017, our Supreme Court held that SORNA I was punitive in effect, and retroactive application of SORNA I to an offender whose offenses occurred before the statute's effective date violated the *ex post facto* clause of the Pennsylvania Constitution. *See Commonwealth v. Muniz*, 64 Pa. 699, 164 A.3d 1189 (2017). Following *Muniz*, the legislature amended

---

[2] The legislature has amended SORNA several times resulting in at least two distinct versions of the Act. For clarity, we will refer to these different versions of the law as SORNA I and SORNA II. Appellant does not specify the version of SORNA under which he was sentenced, but we note that SORNA I was in effect at the time of Appellant's sentencing.

SORNA I. Act 10 amended several provisions of SORNA I and also added several new sections found at 42 Pa.C.S.A. §§ 9799.42, 9799.51-9799.75. In addition, the Governor of Pennsylvania signed new legislation striking the Act 10 amendments and reenacting several SORNA I provisions, effective June 12, 2018. The amended version of SORNA I, with the 2018 amendments, is commonly referred to as "SORNA II."

Through Act 10, as amended in Act 29, the legislature created Subchapter I, which addresses sexual offenders who committed offenses on or after April 22, 1996, but before December 20, 2012. Subchapter I contains less stringent reporting requirements than Subchapter H, which applies to offenders who committed offenses on or after December 20, 2012, SORNA I's effective date.

On July 21, 2020, our Supreme Court issued its decision in **Commonwealth v. Lacombe**, ___ Pa. ___, 234 A.3d 602 (2020). The Court noted that Subchapter I of SORNA II was "markedly different from the version of SORNA invalidated in **Muniz**." **Id**. at ___, 234 A.3d at 606. Accordingly, the Court concluded that Subchapter I is nonpunitive and does not violate the constitutional prohibition against *ex post facto* laws." **Id**. at ___, 234 A.3d at 605-06.

Instantly, Appellant committed the sex offenses at issue in 2009 or

2010, prior to the effective date of SORNA I.[3] **See Muniz, supra**. Thus, the registration and reporting requirements of Subchapter I apply. Our Supreme Court has specifically rejected Appellant's claim that Subchapter I is unconstitutional. **See Lacombe, supra**.

Nevertheless, our review of the record shows that in both the sentencing transcript and the written sentencing order, the court actually provided Appellant with the registration and notification requirements under "Megan's Law" rather than the then-applicable version of SORNA. Specifically, the court stated: "[Y]ou're a Tier 3 offender with respect to Megan's Law. You have a lifetime registry." (N.T. Sentencing, 1/26/17, at 40). Further, the sentencing order states: "Lifetime Registration: Must register with the State Police and comply with all Tier III under Megan's Law requirements." (Sentencing Order, 1/26/17). The registration and reporting requirements which the court imposed upon Appellant are inherently inconsistent, because Megan's Law has no "tiers" but does require lifetime registration for Appellant's conviction of aggravated indecent assault of a child. Conversely, both SORNA I and SORNA II include a Tier III lifetime registration.

Accordingly, the court erred in sentencing Appellant under Megan's Law, and we vacate only that portion of the judgment of sentence regarding

---

[3] S.S. initially stated the assault occurred when she was four years old (2009), and she later testified that it occurred when she was five years old (2010). (**See** N.T. Trial, 10/18/16, at 59). In either case, Subchapter I applies.

Appellant's sex offender registration and reporting requirements. Further, we remand the matter for the court to impose the applicable requirements under Subchapter I of SORNA II.[4]

Convictions affirmed; judgment of sentence vacated in part; case remanded with instructions. Jurisdiction is relinquished.

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*

Date: *1/6/2021*

---

[4] We note that both the trial court and the Commonwealth agree this case should be remanded for the issuance of appropriate reporting requirements.