J-S17038-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS R. KOVACK | : | |
| | : | |
| Appellant | : | No. 1127 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 8, 2022
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0001084-2020

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| THOMAS R. KOVACK | : | |
| | : | |
| Appellant | : | No. 1128 WDA 2022 |

Appeal from the Judgment of Sentence Entered June 8, 2022
In the Court of Common Pleas of Beaver County
Criminal Division at No(s): CP-04-CR-0001085-2020

BEFORE: LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.: **FILED: July 28, 2023**

Appellant, Thomas R. Kovack, appeals from the judgments of sentence entered in the Beaver County Court of Common Pleas, following his jury trial conviction at Case No. 1084-2020 for three counts of indecent assault—person less than 13 years of age, one count of unlawful contact with a minor—sexual offenses, three counts of corruption of minors, and two counts of indecent

assault without consent;[1] and at Case No. 1085-2020 for one count each of unlawful contact with a minor—sexual offenses, indecent assault—person less than 13 years of age, corruption of minors, and indecent assault without consent. We affirm.

The relevant facts and procedural history of these cases are as follows. On May 11, 2020, Midland Borough Police received a child line report concerning the sexual assault of an eight-year-old minor, J.M., which occurred at J.M.'s house. Police arrested Appellant as the perpetrator of the assault. During their investigation, detectives also learned about Appellant's assault of a five-year-old minor, A.L., which occurred in A.L.'s home. Detectives further learned that a third individual, T.T., reported that Appellant had previously assaulted her when she was a child. The families of the minor victims knew each other and would participate in family outings together; both families had longstanding relationships with Appellant.

> [At trial,] J.M. identified Appellant as someone that she knew. She described the incident that occurred in the fort that was made of blankets and pillows. In her words, she stated that Appellant touched her "on [her] private part and [her] bum," and the contact occurred underneath her clothes. She stated that she was just "playing in the tent" and Appellant pulled her over to him and began touching her in the manner that she described. She testified that she tried to "scoot" away from him as he was touching her but that she thought that Appellant pulled her closer to [him]. J.M. testified that the touching that occurred through the

---

[1] 18 Pa.C.S.A. §§ 3126(a)(7), 6318(a)(1), 6301(a)(1)(i), and 3126(a)(1), respectively.

open area of the tent while J.M. unsuccessfully tried to scoot away from Appellant made J.M. feel uncomfortable.

The incident that occurred on April 9, 2020, was also detailed during the testimony of J.M. J.M. testified she was in her father's bedroom, at that time the television was on, but her back was turned to the television because she was coloring on her father's notebook. Appellant came over to J.M. and started touching her. J.M. testified that Appellant was touching her on her "bum," that Appellant was touching her underneath her clothes and that his hands were touching her skin. She confirmed that her father came into the room and saw what Appellant was doing to J.M.

J.M. also testified that there was another incident involving Appellant. The third incident occurred at a close family friend's house. At that time, Appellant told J.M. to take off her clothes and lay on him. J.M. did not give in to his demands on that day. Appellant did not object to this testimony, did not request a cautionary instruction and did not request a cautionary instruction to be included in the final instructions of the court.

\* \* \*

During the testimony of the minor, A.L, she acknowledged that she knew Appellant and that she became aware of Appellant when he lived at [her] grandmother's house. The child testified that, as of the date of her testimony, she was 7 years old. On the date that the incident occurred, A.L. was dropped off at Appellant's home by the child's grandmother. The grandmother did not remain on the premises. Shortly after the child arrived at Appellant's residence, Appellant took A.L. upstairs in the apartment.

The child was then taken into one of the bedrooms located on the second floor of the apartment. The child was then instructed by Appellant to remove her clothes. She went in the bathroom where her clothes were removed. Appellant told the now unclothed child to come out of the bathroom. When she came out of the bathroom Appellant was now on the bed with no clothes on and a brown towel covering his "private parts."

Once the child was on the bed and Appellant was on the bed with the brown towel draped over his middle area Appellant then told the child "to get on top of him." The child did as instructed by Appellant[. W]hen the child complied with the demands of Appellant, Appellant then made the child "go up and down" on Appellant in the area where the towel was located. While the child was doing as instructed by Appellant, Appellant was rubbing the child's "butt" with his hands. Eventually, Appellant instructed the child to get off of Appellant and the child, once again, complied with his request. The child was then laying on the bed face up. Appellant then removed the brown towel from his person and placed it on the child. Appellant then got on top of the child and, in the child's words, "he went up and down" on the child as she lay on the bed. Eventually Appellant got off of the child; the child and Appellant put their clothes back on and then went downstairs in Appellant's apartment. Appellant and the child awaited the arrival of J.M. and her mother, as A.L. was scheduled to spend some time with [] J.M. that day. When J.M. and her mother arrived at Appellant's home, A.L., [J.M.] and her mother were transported to their home by Appellant. A.L. spent the early part of the evening at that home before she returned to her own home shortly after 9:00 p.m.

* * *

At the end of the day…A.L. was still at the home of [J.M. and her mother] and she was visibly upset. A.L.'s mother had to pick up A.L. and take her home because of her emotional state. The child did not immediately disclose what Appellant did to her on that date, but she eventually disclosed the incident to her mother and her grandmother.

* * *

T.T., age 29 at the time of the trial, provided testimony regarding her experience with Appellant that occurred when she was a child. This evidence was introduced pursuant to an agreement between the parties…[where] Appellant consented to the introduction of this [Pa.R.E.] 404(b)(2) evidence in consideration of the Commonwealth's agreement to dismiss a third set of charges arising out of the alleged assault of T.T. that were filed against Appellant.

- 4 -

> T.T. testified that when she was between three and five years old that Appellant would take her to a bedroom at her grandmother's house and engage in inappropriate sexual conduct with her. That conduct consisted of multiple times where he removed her bathing suit and masturbated over her.

(Trial Court Opinion (Case No. 1084), 11/28/22, at 7-15) (footnotes omitted).

The trial court consolidated Cases 1084 and 1085 for trial.[2] At the conclusion of trial, the jury convicted Appellant of the aforementioned charges. On June 8, 2022, the trial court sentenced Appellant to an aggregate term of 30 to 70 months of incarceration at Case 1084. The court imposed a concurrent sentence of 9 to 20 months' incarceration plus a two-year term of probation at Case 1085.[3] On June 10, 2022, Appellant filed a timely post-sentence motion and a motion for appointment of appellate counsel. The trial court granted the motion for appointment of appellate counsel on June 8, 2022, and denied the post-sentence motions on September 16, 2022. Appellant filed timely notices of appeal at each case on September 26, 2022.[4] Appellant further complied with the trial court's order to file a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal, and he filed a

---

[2] The charges at Case 1084 related to Appellant's assault on J.M. The charges at Case 1085 related to Appellant's assault on A.L.

[3] The trial court subsequently issued an amended sentencing order, which corrected a patent, clerical error.

[4] This Court consolidated the appeals *sua sponte*.

timely concise statement on October 18, 2022.

Appellant raises the following issues on appeal:

> Whether Appellant's conviction should be reversed because the Commonwealth failed to present sufficient evidence to prove Appellant's guilt beyond a reasonable doubt as to the element of contacting or communicating with a minor?
>
> Whether Appellant's conviction should be reversed because trial coun[s]el's failure to request a limiting instruction regarding uncharged conduct so undermined the tru[t]h determining process that no reliable adjudicat[io]n of guilt or innocen[c]e could have taken place?
>
> Whether Appellant's conviction should be reversed because the trial court's failure to give a limiting instruction regarding uncharged conduct so undermined the tru[t]h determining process that no reliable adjudicat[io]n of guilt or innocen[c]e could have taken place?

(Appellant's Brief at 8) (unnecessary capitalization omitted).

In his first issue, Appellant argues that the evidence underlying his unlawful contact with a minor conviction was insufficient because the Commonwealth failed to prove that Appellant communicated with J.M. for the purpose of engaging in a sexual offense.[5]  Specifically, Appellant claims that the evidence established that in the first incident, in the fort, Appellant sat down next to J.M. and touched her, but that no verbal communication took

_____

[5] In his questions presented, Appellant does not specify whether he is challenging the sufficiency of the evidence for his conviction of unlawful contact at Case 1084 (related to his assault on J.M.) or at Case 1085 (related to his assault on A.L.).  Nevertheless, Appellant's argument section pertains only to J.M.  Thus, we limit our review to the sufficiency of the evidence regarding Appellant's unlawful contact conviction at Case 1084 related to J.M.

place. In the second incident, on the bed, Appellant contends that J.M. was already sitting in the bed and he lifted her nightgown and touched her; but Appellant maintains there was no evidence of verbal or nonverbal communication. Finally, Appellant insists that J.M.'s testimony about the third incident—where he directed her to lie on top of him with her clothes off—was not charged and should not be used to establish his guilt of unlawful conduct with a minor. Appellant concludes the evidence was insufficient to sustain his conviction for unlawful contact with a minor, and this Court must reverse. We disagree.

Our well-settled standard and scope of review for a challenge to the sufficiency of the evidence underlying a conviction are as follows:

> When examining a challenge to the sufficiency of the evidence:
>
> > The standard we apply…is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received

must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa.Super. 2011) (*en banc*), *appeal denied*, 617 Pa. 637, 54 A.3d 348 (2012) (internal citations, quotation marks, and emphasis omitted).

The Crimes Code defines unlawful contact with a minor as follows:

**§ 6318. Unlawful contact with minor**

**(a) Offense defined.**—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

\* \* \*

**(c) Definitions.**—As used in this section, the following words and phrases shall have the meanings given to them in this subsection:

\* \* \*

"Contacts." Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic

- 8 -

> communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(a)(1), (c). "Even though the statute is entitled 'unlawful contact with a minor,' it is best understood as 'unlawful communication with a minor.' By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes." *Commonwealth v. Rose*, 960 A.2d 149, 152-53 (Pa.Super. 2008), *appeal denied*, 602 Pa. 657, 980 A.2d 110 (2009). Additionally, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa.Super. 2018), *appeal denied*, 651 Pa. 431, 205 A.3d 315 (2019).

In *Commonwealth v. Velez*, 51 A.3d 260 (Pa.Super. 2012), this Court affirmed the conviction of the defendant for unlawful contact with a minor after the victim's mother found the defendant molesting her daughter who was nude from the waist down with her knees up and legs apart. This Court explained that "[t]he victim would not have had her pants removed and her legs in that position absent previous contact by [the defendant], either verbal or physical." *Id.* at 266. Therefore, this Court concluded it was "reasonable to infer that [the defendant] directed the victim, either verbally or nonverbally, to unclothe below the waist and to assume that pose." *Id.*

In *Commonwealth v. Leatherby*, 116 A.3d 73 (Pa.Super. 2015), this Court distinguished *Velez* and held that evidence that the defendant touched

the victim's chest and buttocks while the victim was sleeping did not establish the communication necessary for unlawful contact with a minor. This Court explained that the defendant did not say anything or communicate to the victim to assume any certain position or to submit to any given act. *Id.* at 80.

Instantly, in addressing Appellant's sufficiency challenge, the trial court explained that Appellant intruded the space that J.M. had created for herself in the fort she built and communicated to her by his actions that he was going to touch her buttocks and genitalia. She then attempted to scoot away from him, but Appellant pulled her closer to him as she tried to scoot away. In doing so, Appellant communicated that the assault was going to continue, and J.M. needed to position herself closer to him. (*See* Trial Court Opinion (Case No. 1084) at 18-19). With respect to the second incident, the trial court explained:

> The incident with J.M. that occurred on April 9, 2020 was also ripe with communications as that term has developed in Pennsylvania law. Appellant invaded the space where J.M. chose to be alone. He entered the bedroom quietly in a manner from which it can be inferred was done so as not to provide J.M. with the chance to exit that bedroom before the adult intruder could begin his assault. He entered that room to assault an eight-year old child who was in the habit of putting something in front of doors of rooms that she was trying to block him from coming into those rooms because she did not want him to touch her anymore. ([N.T. Trial, 3/10/22,] at 103). Once he began his assault of J.M., he inserted his hands under the clothing being worn by J.M. Now his bare skinned hands were in contact with J.M.'s buttocks. (*Id.* at 127). The communication to be inferred from that nonverbal communication was that you will

remain here but the touching will involve me manipulating you so that my hands can go under your clothing and up your leg. Finally, when J.M.'s father entered the room and observed that assault occurring on J.M. and observed J.M. in the position with Appellant holding up her clothing with a rod, it was reasonable to infer that Appellant communicated with the victim, either nonverbally or verbally, to assume the position in which her father found her. …

(*Id.* at 19-20).

We agree with the trial court's analysis that the evidence was sufficient to establish that Appellant was in contact with J.M. for a sexual purpose. **See Johnson, supra**; **Rose, supra**. This case is distinguishable from **Leatherby**, because here J.M. was awake and there is evidence that Appellant nonverbally communicated to her that she must submit to his unwanted touching of her private parts. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's conviction. **See Orr, supra**. Appellant's first issue is meritless.

Regarding Appellant's second and third issues on appeal, we observe that Appellant failed to include any argument concerning these issues in the discussion portion of his brief. Therefore, those issues are waived. **See** Pa.R.A.P. 2119(a); **Commonwealth v. Hakala**, 900 A.2d 404 (Pa.Super. 2006), *appeal denied*, 589 Pa. 737, 909 A.2d 1288 (2006) (stating failure to develop argument on appeal results in waiver). Accordingly, Appellant's final two issues are waived, and we affirm the judgments of sentence.

Judgments of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 7/28/2023