J-S46023-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EUGENE KASIEWICZ | : | |
| | : | |
| Appellant | : | No. 587 WDA 2023 |

Appeal from the Judgment of Sentence Entered December 16, 2022
In the Court of Common Pleas of Fayette County Criminal Division at
No(s):  CP-26-CR-0000037-2022

BEFORE:  DUBOW, J., MURRAY, J., and SULLIVAN, J.

MEMORANDUM BY MURRAY, J.:                    **FILED: February 21, 2024**

Eugene Kasiewicz (Appellant) appeals from the judgment of sentence imposed following his conviction by a jury of involuntary deviate sexual intercourse (IDSI) - person less than 16 years; statutory sexual assault; and unlawful contact with a minor.[1]  We affirm.

The trial court summarized the facts underlying this appeal:

On April 27, 2021, Pennsylvania State Trooper Robert Wilson testified that [Appellant] came into the Pennsylvania State Police Barracks.  Initially, the Troopers were unaware of why the [Appellant] had asked to speak to them.  After [Appellant] gave the Troopers a very brief statement, the Troopers took him to an interview room to determine what [Appellant] wanted to discuss. (N.T. Vol 1 of 2, 12/2/22 at pg. 44).  That interview was recorded and was played for the jury.  *Id.*  Initially, the Troopers were unsure if [Appellant] was reporting a crime or confessing to one. When asked to clarify what he was saying, [Appellant] stated: "I

_____

[1] 18 Pa.C.S.A. §§ 3123(a)(7), 3122.1, 6318(a)(1).

assaulted him. I had his prick in my mouth," referring to the child victim. (N.T. at p. 46).

[Appellant] was provided a Noncustodial Written Statement Form. The Troopers informed him that he was not under arrest and could leave. One Trooper remained with [Appellant] as he wrote his statement. The form includes three questions before the "Narrative" portion[,] and [Appellant] marked yes to the following three questions:

(1) Do you understand that you are NOT IN CUSTODY, are free to leave at any time, and that the statement you wish to provide is completely voluntary?

(2) Do you wish to make a formal statement?

(3) Are you able to read and write the English language?

After [Appellant] completed his statement, he was permitted to leave. The Troopers then began an investigation based on [Appellant's] statements. After questioning the juvenile victim, the victim's Aunt and Uncle, and [Appellant] again, the Troopers filed the charges in this case.

Trial Court Opinion, 4/28/23, at 1-2.

A jury trial commenced on December 5, 2022. As described by the trial court,

At trial, the juvenile[, Appellant's nephew,] testified that he was helping … [Appellant] to move things in [Appellant's] mobile home. At that time, he was fifteen years of age with a birth date of 10/24/2005. [Appellant] suddenly forced him into the bedroom, removed his clothing, and inserted his penis in his rectum, then he put his mouth on the victim's penis. The victim was able to flee [Appellant's] mobile home. (N.T., p. 21).

The juvenile mentioned the assault to his sister in Texas but did not mention this to his Aunt and Uncle, with whom he lived[,] and only disclosed the assault to an adult after he moved in with his grandparents. The juvenile testified that he didn't tell anyone in his Uncle's family because they think he's a liar. (N.T., p. 27).

After a domestic incident that occurred almost a year later, the juvenile was moved to his grandparent's house.

In his statement to the police, [Appellant's] brother, Charles Kasiewicz, informed the police that [Appellant] did disclose to him some information about the assault; but he testified inconsistently at trial that [Appellant] had never talked to him about the assault. (N.T. p. 90).…

[Appellant] testified that nothing happened between the juvenile and himself. He testified that he lied to the police when he stated that he had put the juvenile's penis in his mouth. He only said he assaulted the juvenile because the juvenile wanted to leave his brother's house and [Appellant] wanted to help him. [Appellant] also testified that he wanted the juvenile away from his other nieces and nephews. (N.T. p. 85). [Appellant] denied assaulting the juvenile and testified that he only wanted to help him move out of his uncle's residence.

Trial Court Opinion, 4/28/23, at 3.

The jury ultimately convicted Appellant of the above-described charges. For his conviction of IDSI, the trial court sentenced Appellant to a prison term of 54 months to 10 years.[2] The court imposed no further penalty for the remaining convictions. Appellant filed his notice of appeal on May 17, 2023.[3]

---

[2] Although the trial court announced its sentence on December 9, 2012, the trial court filed an amended sentencing order of December 16, 2012.

[3] Ordinarily, this appeal would be untimely. A notice of appeal must be filed within 30 days of the entry of the order being appealed. *See* Pa.R.A.P. 903(a); ***Commonwealth v. Moir***, 766 A.2d 1253, 1254 (Pa. Super. 2000). If the defendant files a timely post-sentence motion, the notice of appeal shall be filed within 30 days of the entry of the order deciding the motion. Pa.R.Crim.P. 720(A)(2)(a). A trial court has 120 days to decide a post-sentence motion, and if it fails to decide the motion within that period, the motion is deemed denied by operation of law. Pa.R.Crim.P. 720(B)(3)(a). When the motion is denied by operation of law, **the clerk of courts shall**
*(Footnote Continued Next Page)*

Appellant presents the following issues for our review:

(1)   WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT APPELLANT HAD COMMITTED INVOLUNTARY DEVIATE SEXUAL INTERCOURSE.

(2)   WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT APPELLANT HAD COMMITTED STATUTORY SEXUAL ASSAULT.

(3)   WHETHER THE EVIDENCE WAS LEGALLY AND FACTUALLY SUFFICIENT TO PROVE THAT APPELLANT HAD COMMITTED UNLAWFUL CONTACT WITH A MINOR.

(4)   WHETHER THE TRIAL COURT ABUSED ITS DISCRETION IN RULING THAT APPELLANT COULD NOT IMPEACH THE VICTIM BY INTRODUCING TESTIMONY OF ACTIONS BY THE VICTIM.

(5)   WHETHER THE VERDICT WAS AGAINST THE WEIGHT OF THE EVIDENCE IN THAT THE TESTIMONY OF THE ALLEGED VICTIM [] CONTRADICTED HIMSELF AND THE TESTIMONY OF [APPELLANT'S BROTHER,] RICHARD KASIEWICZ[,] IN THE CIRCUMSTANCES SURROUNDING THE ALLEGED INCIDENTS.

Appellant's Brief at 4-5 (issues renumbered).

---

**enter an order deeming the motion denied on behalf of the trial court**. Pa.R.Crim.P. 720(B)(3)(c).  Instantly, the clerk entered no such order.   This Court has held that a court breakdown occurs when the trial court clerk fails to enter an order deeming post-sentence motions denied by operation of law pursuant to Pa.R.Crim.P. 720(B)(3)(c).  **See Commonwealth v. Patterson**, 940 A.2d 493, 498-99 (Pa. Super. 2007) ("We have also found a breakdown where the clerk of courts did not enter an order notifying the appellant that his post-sentence motion was denied by the operation of law.").  Under these circumstances, we decline to quash the appeal and will consider Appellant's substantive issues.

We address Appellant's first three issues together. In each issue, Appellant challenges the sufficiency of the evidence underlying his convictions. When examining a challenge to the sufficiency of the evidence,

> The standard we apply ... is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.
>
> This standard is equally applicable in cases where the evidence is circumstantial, rather than direct, provided that the combination of evidence links the accused to the crime beyond a reasonable doubt.

*Commonwealth v. Orr*, 38 A.3d 868, 872-73 (Pa. Super. 2011) (*en banc*) (internal citations, quotation marks, and emphasis omitted). Additionally, "the uncorroborated testimony of a single witness is sufficient to sustain a conviction for a criminal offense, so long as that testimony can address and, in fact, addresses, every element of the charged crime." *Commonwealth v. Johnson*, 180 A.3d 474, 481 (Pa. Super. 2018).

- 5 -

Regarding the crime of IDSI - person less than 16 years, the Crimes Code provides,

> A person commits a felony of the first degree when the person engages in deviate sexual intercourse with a complainant … who is less than 16 years of age and the person is four or more years older than the complainant and the complainant and person are not married to each other.

18 Pa.C.S.A. § 3123(a)(7).   "Deviate sexual intercourse" includes "sexual intercourse per os or per anus between human beings."  18 Pa.C.S.A. § 3101. Emission is not required.  *Id.*

A person commits the crime of statutory sexual assault "when that person engages in sexual intercourse with a complainant under the age of 16 years and that person is 11 or more years older than the complainant and the complainant and the person are not married to each other." 18 Pa.C.S.A. § 3122.1(b).

The Crimes Code defines unlawful contact with a minor as follows:

**§ 6318. Unlawful contact with minor**

**(a) Offense defined**.-A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

> (1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses).

**(c) Definitions**.-As used in this section,  the following words and phrases shall have the meanings given to them in this subsection:

> "Contacts." Direct or indirect contact or communication by any means, method or device, including contact or communication in person or through an agent or agency, through any print medium, the mails, a common carrier or communication common carrier, any electronic communication system and any telecommunications, wire, computer or radio communications device or system.

18 Pa.C.S.A. § 6318(a)(1), (c). "Even though the statute is entitled 'unlawful contact with a minor,' it is best understood as 'unlawful communication with a minor.' By its plain terms, the statute prohibits the act of communicating with a minor for enumerated sexual purposes." *Commonwealth v. Rose*, 960 A.2d 149, 152-53 (Pa. Super. 2008).

As to each conviction, Appellant claims he did not engage in any sexual acts with the victim. *See* Appellant's Brief at 14 (stating he did not engage in IDSI, and no inference can be drawn from the conflicting evidence); *see also id.* (stating Appellant did not engage in intercourse with the victim, and no inference can be drawn from the conflicting evidence); *see also id.* at 14-15 (stating Appellant did not engage in unlawful contact with the victim, and no inference can be drawn from the conflicting evidence).

Our review discloses that at trial, the Commonwealth presented the testimony of the victim. N.T., 12/5/22, at 15. The victim testified that not long before April 4, 2021 (Easter), he visited the trailer of his uncle, Appellant. *Id.* at 21. According to the victim, Appellant "came at me from the back and bear hugged me." *Id.* at 22. The victim explained, Appellant "squeezed me hard enough to where I could not … get away from him at that time." *Id.* at

- 7 -

23. The victim confirmed he tried to escape Appellant. *Id.* At the time, the victim was 15 years old.[4] *See id.* at 16 (stating the victim's date of birth).

The victim stated Appellant then took the victim to his bedroom and, while still holding the victim, successfully removed the victim's shorts. *Id.* at 24. Appellant told the victim to "quit squirming and trying to get away." *Id.* Appellant then inserted his penis into the victim's anus. *Id.* at 25. Afterwards, Appellant inserted his penis in the victim's mouth. *Id.* The victim then pushed Appellant away and was able to escape. *Id.* at 26. The victim reported the incident to his sister. *Id.* at 28. Some time later, the victim ran to a neighbor's house and called police. *Id.* at 29.

Pennsylvania State Trooper Robert Wilson testified that on April 27, 2021, he and his partner were called to the State Police dispatch office. *Id.* at 42-43. When he arrived at dispatch, Appellant "had come into the lobby and requested to speak to a crime trooper." *Id.* at 43. Trooper Wilson took the uncuffed Appellant to an interview room. *Id.* The trooper explained Appellant was not in custody and free to leave. *Id.* Appellant confessed to his assault of the victim in a recorded interview. *See id.* at 45 (wherein the recording was played for the jury).

Trooper Wilson read for the jury Appellant's three-page signed statement. *Id.* at 50-51. He testified,

---

[4] Appellant does not dispute he was more than 11 years older than the victim.

> So on the bottom of page 1, [Appellant] starts the statement, "We was down in the barn talking, was trying to bust [the victim's] chops about what he did bad. When a thought popped into my head, give him what he wants and he will leave my little buddies alone. I really can, I really cannot remember who undone his pants, he turned his head to the left and then I put" … and it continues to a second page, "I put his penis into my mouth. It was then that I realized I was doing wrong and immediately remove my mouth, removed my mouth. This was the only way CYS would take [the victim] and get him so that he would not terrorize my family anymore. I also tried … offering myself to him two other times so he would leave my buddies alone[,] but all he did was stare." And then at the end of a statement we have them put their initials so there's an "EK" [(Appellant's initials)] at the end of his … statement.

*Id.* at 50. Trooper Wilson further explained that on the fourth page, Appellant confirmed the information in the statement is true. *Id.* at 51.

Viewing the evidence in a light most favorable to the Commonwealth as verdict winner, the evidence established Appellant

(1) Engaged in deviate sexual intercourse with a person less than 16 years old, in violation of 18 Pa.C.S.A. § 3123(a)(7);

(2) Engaged in sexual intercourse with a complainant under 16 years of age, in violation of 18 Pa.C.S.A. § 3122.1(b); and

(3) Unlawfully contacted the victim to engage in IDSI, in violation of 18 Pa.C.S.A. § 6318(a)(1).

Accordingly, Appellant's challenges to the sufficiency of the evidence underlying each of his convictions merit no relief.

In his fourth issue, Appellant argues the trial court improperly precluded him from impeaching the victim with the victim's prior bad acts. Appellant's Brief at 8. Appellant argues that at trial, the victim testified on cross-examination that he had never taken anything from Appellant's trailer. *Id.*

- 9 -

Appellant sought to challenge the victim's statement by offering the testimony of his relative, Charles Kasiewicz (Kasiewicz). Appellant claims,

> defense counsel asked [Kasiewicz], "… [W]hy was your son or you always with [the victim] when he went down to [Appellant's] trailer." T.T. page 91. [Kasiewicz's] response was "Because [the victim is] a little thief." The Commonwealth objected to the answer which the court sustained….

*Id.* at 8-9. Appellant claims the trial court erroneously cited to Pa.R.E. 604 when denying the prior bad acts evidence. *Id.* at 9.

Appellant argues the evidence is admissible under Pa.R.E. 404(a)(3), which permits the admission of evidence of a person's character, and Rule 607, which permits evidence the admission of character to impeach a witness. Appellant's Brief at 9. Appellant claims the trial court improperly disallowed evidence related to the victim's thievery, "which led to Appellant's belief that his confessions to crimes he didn't commit was his only hope." *Id.* at 10. Appellant claims the preclusion of this evidence caused him prejudice. *Id.*

The following standard governs our review:

> Admission of evidence is within the sound discretion of the trial court and will be reversed only upon a showing that the trial court clearly abused its discretion. Admissibility depends on relevance and probative value. Evidence is relevant if it logically tends to establish a material fact in the case, tends to make a fact at issue more or less probable or supports a reasonable inference or presumption regarding a material fact.

> Judicial discretion requires action in conformity with law, upon facts and circumstances judicially before the court, after hearing and due consideration. An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice,

- 10 -

bias, or ill will, as shown by the evidence or the record, discretion is abused.

***Commonwealth v. Borovichka***, 18 A.3d 1242, 1253 (Pa. Super. 2011)

(quoting ***Commonwealth v. Levanduski***, 907 A.2d 3, 13-14 (Pa. Super.

2006) (*en banc*) (internal citations omitted)).

Pennsylvania Rule of Evidence 404 governs the admissibility of character

evidence:

**(a)** Character Evidence.

**(1) *Prohibited Uses.*** Evidence of a person's character or character trait is not admissible to prove that on a particular occasion the person acted in accordance with the character or trait.

**(2) *Exceptions for a Defendant or Victim in a Criminal Case.*** The following exceptions apply in a criminal case:

**(A)** a defendant may offer evidence of the defendant's pertinent trait, and if the evidence is admitted, the prosecutor may offer evidence to rebut it;

**(B) subject to limitations imposed by statute a defendant may offer evidence of an alleged victim's pertinent trait, and if the evidence is admitted the prosecutor may**:

**(i)** offer evidence to rebut it; and

**(ii)** offer evidence of the defendant's same trait; and

**(C)** in a homicide case, the prosecutor may offer evidence of the alleged victim's trait of peacefulness to rebut evidence that the victim was the first aggressor.

**(3) *Exceptions for a Witness.*** Evidence of a witness's character may be admitted under Rules 607, 608, and 609.

….

**(b)** Other Crimes, Wrongs, or Acts.

**(1) *Prohibited Uses.* Evidence of any other crime, wrong, or act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.**

**(2) *Permitted Uses.*** This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident. **In a criminal case this evidence is admissible only if the probative value of the evidence outweighs its potential for unfair prejudice.** ….

Pa.R.E. 404 (emphasis added).

Pennsylvania Rule of Evidence 608 governs the admissibility of evidence relating to a witness' character for truthfulness or untruthfulness as follows:

**Rule 608. A Witness's Character for Truthfulness or Untruthfulness**

….

**(b) Specific Instances of Conduct**. Except as provided in Rule 609 (relating to evidence of conviction of crime),

(1) **the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct** …

Pa.R.E. 608(b)(1) (emphasis added). In other words, "Pa.R.E. 608(b)(1) prohibits the use of evidence of specific instances of conduct to support or attack credibility." Pa.R.E. 608 cmt.

In ***Commonwealth v. Minich***, 4 A.3d 1063 (Pa. Super. 2010), this Court analyzed the intersection and applicability of Rules of Evidence

- 12 -

404(a)(2), 405, and 608, where a criminal defendant sought to introduce

character evidence against the victim, who had testified against the

defendant:

> [W]hile Pa.R.E. 608 addresses only one character trait
> (truthfulness or untruthfulness), and prohibits the use of instances
> of specific conduct to establish the trait, Pa.R.E. 404(a) applies to
> evidence regarding any "pertinent" character trait and, through
> the operation of case law codified in Pa.R.E. 405, allows evidence
> of specific conduct to prove the "pertinent" trait.

*Minich*, 4 A.3d at 1069-70 (internal footnote omitted) (discussing previous

versions of Pa.R.E. 404(a), 405, and 608, which have remained largely

unchanged).

> [A] "pertinent" character trait for purposes of Pa.R.E. 404(a)(2)[]
> is limited to a character trait of the victim that is relevant to the
> crime or defense at issue in the case. Therefore, whenever the
> accused seeks to offer character evidence for purposes of
> attacking or supporting the credibility of a victim who testifies, the
> admissibility of such evidence is governed by Pa.R.E. 608 and
> proof of specific incidents of conduct by either cross-examination
> or extrinsic evidence is prohibited. To hold otherwise would allow
> the phrase "pertinent trait of character" in Pa.R.E. 404(a)(2) to
> modify established case law defining the parameters of
> permissible evidence to impeach or bolster the credibility of
> witnesses.
>
> ….
>
> In [*Minich*], the Commonwealth sought to preclude [the
> defendant] from introducing evidence of specific instances in
> which the victim of a sexual assault was caught lying in school
> about matters wholly unrelated to the allegations against [the
> defendant]. Based upon its broad interpretation of the phrase
> "pertinent trait of character," the trial court concluded that such
> evidence was admissible under Pa.R.E. 404(a)(2)[]. … [T]his
> determination was in error. [The defendant] intend[ed] to use
> this evidence to challenge the victim's credibility. As such, its
> admissibility is governed by Pa.R.E. 608. … Pa.R.E. 608 provides

that "**the character of a witness for truthfulness may not be attacked … by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct**." Pa.R.E. 608(b)(1).  As this is the precise purpose for which [the defendant] intend[ed] to use this evidence, it [was] not admissible.

*Id.* at 1072-73 (emphasis added; internal citation to record omitted).

Instantly, Appellant was charged with multiple sex offenses resulting from his sexual abuse of the victim, who testified against Appellant at trial. During cross-examination of the victim, Appellant tried to introduce evidence that the victim was a "thief," as well as specific instances of his conduct.  The trial court properly excluded this evidence.  **See** Pa.R.E. 404(b)(1) (barring "[e]vidence of any other crime, wrong, or act … to prove a person's character in order to show that on a particular occasion"); **see also** Pa.R.E. 608 cmt*.* (Rule 608 prohibits the use of specific instances of conduct to support or attack credibility).

Finally, we agree with the trial court that evidence regarding the victim's alleged thievery was irrelevant:

> The issue of whether the [victim] was a "thief" was irrelevant to whether he is a victim in a sex assault case.  No response was made by counsel as to why the evidence should be admitted nor was [there] any proffer of what the statements would have included.  As a result, the issue of the testimony could not be addressed any further by the [c]ourt.  The testimony labeling the [victim] as a thief was not relevant to the charges before the court.
>
> ….
>
> The objection to the witness's testimony occurred on the first day of the trial.  There was no information provided during

the trial … about the content of the testimony that was not admitted at the trial. There were no further questions of the other witnesses about the [victim's] reputation for truthfulness. There was no attempt … by defense counsel to provide the [c]ourt with the information to be presented, or to request that the court reconsider its ruling together with authority supporting the admissibility of the evidence.

Trial Court Opinion, 4/28/23, at 6-7. Under these circumstances, we discern no error or abuse of the trial court's discretion in precluding testimony regarding the victim's alleged thievery. **See id.**; **see also Minich**, 4 A.3d at 1072-73; Pa.R.E. 404 cmt.; Pa.R.E. 608. Appellant's fourth issue merits no relief.

Finally, Appellant challenges the verdicts as against the weight of the evidence.[5] Appellant's Brief at 10. Appellant argues the victim "testified to a completely different set of facts tha[n] were available to the defense in discovery and all other proceedings." **Id.** at 11. Appellant claims that during trial, the victim for the first time claimed anal penetration. **Id.** Appellant points out the victim never testified regarding anal penetration at the preliminary hearing. **Id.** Further, Appellant points to the testimony of State Trooper Anthony Svetz, who confirmed "that the first time [the trooper] was made aware of an anal sex allegation was at the trial." **Id.**

Appellant alleges the victim could not accurately describe where this incident took place, and that his description of Appellant's bedroom did not

---

[5] Appellant preserved this claim in his post-sentence motion.

- 15 -

comport with photos offered into evidence. *Id.* at 11-12. Appellant asserts that, "[k]ey to the defense of Appellant was that the victim's actions were so heinous, that Appellant felt there was no other way to remove the victim from his home other than to provide the statements he had." *Id.* at 12.

As our Supreme Court has explained,

> The decision to grant or deny a motion for a new trial based upon a claim that the verdict is against the weight of the evidence is within the sound discretion of the trial court. Thus, the function of an appellate court on appeal is to review the trial court's exercise of discretion based upon a review of the record, rather than to consider *de novo* the underlying question of the weight of the evidence. An appellate court may not overturn the trial court's decision unless the trial court palpably abused its discretion in ruling on the weight claim. Further, in reviewing a challenge to the weight of the evidence, a verdict will be overturned only if it is so contrary to the evidence as to shock one's sense of justice.

*Commonwealth v. Cash*, 137 A.3d 1262, 1270 (Pa. 2016) (internal citations and quotation marks omitted).

In its opinion, the trial court found the jury's verdict was not against the weight of the evidence:

> [Appellant] contests the jury's findings that he sexually assaulted this juvenile and failed to accept that he went into the police barracks and lied when he confessed to the Pennsylvania State Troopers. The jury chose not to accept [Appellant's] testimony that he never sexually assaulted the [victim] as the truth[,] nor did they accept that [Appellant's] statements were only made to help the juvenile be placed outside [Appellant's u]ncle's residence. [Appellant] testified that [the victim] and [Appellant] were both lying when they both said it did happen. [Appellant] initially lied to help [the victim, his nephew,] get out of the house and be placed with another family. Although the juvenile was uncertain of the date, he was consistent as to the location where it occurred, and that [Appellant] did put his mouth on his penis. [Appellant's] assertion that [the victim] was lying abut the incident occurring

- 16 -

flies in the face of the fact that [Appellant] confessed to the sex assault before the child reported this to the police.

This court had the opportunity to hear and see the witnesses testify, review the evidence presented, and consider that evidence in relation to the elements of the charges lodged against [Appellant,] and has determined that the evidence was not tenuous, vague or uncertain as to the sex assault, and the verdict was not so contrary to the evidence as to shock the court's conscience. The material evidence presented clearly supported the verdict of the jury. This issue is without merit.

Trial Court Opinion, 4/4/28/23, at 5. We discern no abuse of the trial court's discretion in rejecting Appellant's weight challenge, and the verdict does not shock our collective sense of justice. We thus agree with the trial court's determination that Appellant's claim warrants no relief.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 02/21/2024

- 17 -