COMMONWEALTH of Pennsylvania,
Appellee

v.

Thomas J. ROSE, Appellant.

Commonwealth of Pennsylvania,
Appellant

v.

Thomas J. Rose, Appellee.

Superior Court of Pennsylvania.

Submitted May 5, 2008.
Filed Oct. 20, 2008.

Robert C. Brady, Washington, for Rose.

Anthony W. Forray, Assistant District Attorney and William R. Stoycos, Assistant District Attorney, Harrisburg, for Commonwealth.

BEFORE: LALLY–GREEN, KLEIN, and POPOVICH, JJ.

OPINION BY LALLY–GREEN, J.:

¶ 1 Appellant Thomas J. Rose appeals from the judgment of sentence entered on January 27, 2007. The Commonwealth has filed a cross-appeal. We conclude that Rose's appeal lacks merit and that the Commonwealth's cross-appeal is meritorious. Thus, we affirm in part and remand for further proceedings.

¶ 2 The factual and procedural history of the case is as follows. Between September 9, 2005 and September 16, 2005, Rose engaged in eight instant message conversations and 32 off-line communications with a person whom he believed to be a 12–year–old girl. In fact, Rose was communicating with Agent Lisa Ceh of the Attorney General's Office. The communications were of a sexual nature. At trial, Agent Ceh testified that these conversations ultimately led to Rose proposing a meeting. Rose and the "girl" agreed to a meeting place and time. Rose drove to that meeting place with condoms in his car, and upon arrival was arrested.

¶ 3 A jury found Rose guilty of attempted unlawful contact with a minor ("attempted unlawful contact" or "count 1") [1] and criminal use of a communication facility ("communication facility" or "count 2"). [2] The trial court then set aside the jury's verdict of guilt on count 2. The court reasoned that the verdict was inconsistent with some of the jury's factual findings as expressed on the special interrogatory verdict slip. The court then sentenced Rose only on count 1. [3] Rose appeals from the judgment of sentence on count 1. The Commonwealth cross-appeals from the trial court's decision to set aside the verdict on count 2. [4]

¶ 4 We begin with Rose's appeal. He raises the following issues:

1. Does Pennsylvania statute of Unlawful Communication with a Minor violate the Dormant Commerce Clause in the United States Constitution?

2. Is the Pennsylvania Statute of Unlawful Communication with a Minor unconstitutionally vague and violative of

---

1. 18 Pa.C.S.A. §§ 901, 6318(a)(1).

2. 18 Pa.C.S.A. § 7512(a).

3. The court sentenced Rose to one to two years of intermediate punishment, and two years of probation. The court also required Rose to register under Megan's Law for a period of ten years.

4. There are no double jeopardy concerns arising from the Commonwealth's appeal. Vacating the trial court's order will simply reinstate the original jury verdict of guilt. *Commonwealth v. Parker*, 305 Pa.Super. 516, 451 A.2d 767 (1982); *Commonwealth v. Feathers*, 442 Pa.Super. 490, 660 A.2d 90, 93–94 (1995), *affirmed*, 546 Pa. 139, 683 A.2d 289 (1996).

Appellants' due process rights under the Pennsylvania and United States Constitution?

3. Did the Court err in not granting a mistrial when the Commonwealth explicitly stated their opinion as to the guilt and credibility of the Appellant?

Rose's Brief at 3.[5]

¶ 5 First, Rose argues that 18 Pa.C.S.A. § 6318, which prohibits "unlawful contact with a minor," unconstitutionally regulates interstate commerce over the internet. Rose invokes the dormant Commerce Clause of the United States Constitution. U.S. Const. art. I, § 8. Specifically, Rose argues that the statute could violate the dormant Commerce Clause by ensnaring an out-of-state resident. Rose's claim has two sub-components: (1) the out-of-state resident may not know that the person he is communicating with is a Pennsylvania minor; and (2) the out-of-state resident may not know that his internet activity is illegal in Pennsylvania.

¶ 6 Rose raises questions of law. *Commonwealth v. Meals*, 590 Pa. 110, 912 A.2d 213, 218 (2006). Our scope of review is plenary and our standard of review is *de novo*. *Id.* Before directly addressing Rose's first issue on appeal, we will generally examine the statute, and then address the Commonwealth's assertion that Rose

lacks standing to raise his constitutional claim.

¶ 7 The crime of unlawful contact with a minor is defined in relevant part as follows:

**§ 6318. Unlawful contact with a minor**

**(a) Offense defined.**—A person commits an offense if he is intentionally in contact with a minor, or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor, for the purpose of engaging in an activity prohibited under any of the following, and either the person initiating the contact or the person being contacted is within this Commonwealth:

(1) Any of the offenses enumerated in Chapter 31 (relating to sexual offenses). [These offenses include: rape, statutory sexual assault, involuntary deviate sexual intercourse, sexual assault, institutional sexual assault, aggravated indecent assault, indecent assault, and indecent exposure.]

18 Pa.C.S.A. § 6318(a)(1).[6]

¶ 8 Even though the statute is titled "unlawful contact with a minor," it is best understood as "unlawful **communication** with a minor." By its plain terms, the

---

**5.** Rose filed a timely concise statement of matters complained of on appeal pursuant to Pa.R.A.P.1925. The trial court issued a Rule 1925 opinion on April 7, 2007.

**6.** At the time of Rose's offense, the phrase "or a law enforcement officer acting in the performance of his duties who has assumed the identity of a minor" did not appear in the statute. *See* 18 Pa.C.S.A. § 6318, Historical and Statutory Notes. This may explain why Rose was charged with **attempted** unlawful contact, rather than unlawful contact itself. We also note that at the time of Rose's offense, the crime of unlawful contact was graded the same as "the most serious underlying

offense in subsection (a) for which the defendant contacted the minor," or a first-degree misdemeanor, whichever is greater. *Id., citing* former 18 Pa.C.S.A. § 6318(b). Rose's crime was ultimately graded as a first-degree misdemeanor, because the jury found that Rose's underlying intent for this crime was indecent assault. *See* 18 Pa.C.S.A. § 3126(a)(7); 3126(b), and Historical and Statutory Notes thereto. The unlawful contact statute has since been amended to make the lowest possible gradation a third-degree felony. *See* 18 Pa.C.S.A. § 6318, Historical and Statutory Notes.

statute prohibits the act of communicating with a minor for enumerated sexual purposes. The communication may take place in person, on the telephone, via a computer, or in other ways. 18 Pa.C.S.A. § 6318(c). Because the crime is complete as of the moment of communication, it is not necessary for the defendant to take any further affirmative steps to have physical contact with the minor, such as driving to a hotel.[7] *Commonwealth v. Morgan*, 913 A.2d 906 (Pa.Super.2006), *appeal denied*, 592 Pa. 788, 927 A.2d 623 (2007).

■ ¶ 9 We now turn to the Commonwealth's argument that Rose lacks standing to raise his dormant Commerce Clause claim. "The core concept in any standing analysis is that a person who is not adversely affected in any way by the matter he seeks to challenge is not 'aggrieved' thereby and has no standing to obtain a judicial resolution of his challenge." *Soc'y Hill Civic Ass'n v. Pa. Gaming Control Bd.*, 593 Pa. 1, 928 A.2d 175, 184 (2007). Generally, in order to have standing a person must have a "substantial, direct, and immediate interest" in the outcome of the litigation. *Id.* A person does not have a direct interest if he has not been harmed by the specific constitutional concern at issue. *Id.; see also Commonwealth v. Bell*, 512 Pa. 334, 516 A.2d 1172, 1177 (1986); *Commonwealth v. Haldeman*, 288 Pa. 81, 135 A. 651, 652 (1927).

¶ 10 Again, Rose argues that the statute could violate the dormant Commerce Clause by ensnaring an out-of-state resident. The record reflects, however, that Rose was not an out-of-state resident. In fact, he resided in Westmoreland County during all relevant time periods. Rose himself has not suffered an actual injury

based on any purported dormant Commerce Clause violation. Thus, we conclude that Rose lacks standing to argue the constitutionality of the Pennsylvania statute.

■ ¶ 11 Even assuming *arguendo* that Rose had standing, he would not be entitled to relief because there is no dormant Commerce Clause violation here. Our Supreme Court has explained that the dormant Commerce Clause of the federal constitution prohibits states from engaging in economic protectionism:

> The United States Constitution provides that "Congress shall have Power ... to regulate Commerce ... among the several States." U.S. Const. art. I, § 8. While the Commerce Clause expressly speaks only to the ability of Congress to regulate interstate commerce, it has been interpreted to contain "an implied limitation on the power of the States to interfere with or impose burdens on interstate commerce." *Western & Southern Life Ins. Co. v. State Bd. of Equalization of California*, 451 U.S. 648, 652, 101 S.Ct. 2070, 68 L.Ed.2d 514 (1981). This limitation has been sometimes coined the "negative" or "dormant" Commerce Clause.... The dormant Commerce Clause "prohibits economic protectionism-that is, regulatory measures designed to benefit in-state economic interests by burdening out-of-state competitors." *New Energy Co. of Indiana v. Limbach*, 486 U.S. 269, 273, 108 S.Ct. 1803, 100 L.Ed.2d 302 (1988).

*Office of Disciplinary Counsel v. Marcone*, 579 Pa. 1, 855 A.2d 654, 666 (2004), *cert. denied*, 543 U.S. 1151, 125 S.Ct. 1332, 161 L.Ed.2d 114 (2005).

---

7. Such further steps could be described as attempted statutory sexual assault or attempted involuntary deviate sexual intercourse. Those are different crimes altogether. *See*

*Commonwealth v. Zingarelli*, 839 A.2d 1064 (Pa.Super.2003), *appeal denied*, 579 Pa. 692, 856 A.2d 834 (2004). Rose was not charged with those crimes.

¶ 12 As noted above, § 6318 is a criminal statute that prohibits communicating with minors for sexual purposes. Rose has failed to articulate any economically protectionist aspect to this statute, either in general or as it particularly applies to him. *See id.* (Pennsylvania attorney failed to assert a dormant Commerce Clause violation in being disbarred, because he could not "explain how his in-state economic interests are benefited by burdening out-of-state competitors.").

¶ 13 We also note that state appellate courts have uniformly rejected dormant Commerce Clause challenges to criminal statutes that prohibit luring minors into sexual activity. These courts have held that the criminal statutes are a valid exercise of the state's police power, even though the contact with the minor takes place via the internet. *See Hatch v. Superior Court,* 80 Cal.App.4th 170, 94 Cal. Rptr.2d 453, 471 (2000); *State v. Snyder,* 155 Ohio App.3d 453, 801 N.E.2d 876, 886 (2003), *appeal denied,* 102 Ohio St.3d 1422, 807 N.E.2d 367 (2004); *People v. Foley,* 94 N.Y.2d 668, 709 N.Y.S.2d 467, 731 N.E.2d 123 (2000), *cert. denied,* 531 U.S. 875, 121 S.Ct. 181, 148 L.Ed.2d 124 (2000). Such a statute "does not discriminate against or burden interstate trade; it regulates the conduct of individuals who intend to use the internet to endanger the welfare of children." *Foley,* 709 N.Y.S.2d 467, 731 N.E.2d at 132. Because this reasoning is persuasive, we hereby adopt it.

■ ¶ 14 In the same section of his brief, Rose suggests that § 6318 is unconstitutionally vague. If an appellant fails to develop a claim with citations to legal au-

thority, the claim is waived. *Commonwealth v. Jones,* 583 Pa. 130, 876 A.2d 380, 386 (2005); *Commonwealth v. Spease,* 911 A.2d 952, 959 (Pa.Super.2006). Here, Rose's brief fails to develop any meaningful independent argument in support of his vagueness claim. Instead, Rose seems to rely entirely on his dormant commerce clause analysis in support of the vagueness claim. We conclude that this issue is waived.[8]

■ ¶ 15 Finally, Rose argues that the trial court erred by not granting a mistrial. Rose claims that during closing argument, the prosecutor impermissibly stated his personal opinion of Rose's guilt and credibility.

■ ¶ 16 Initially, we note that Rose's counsel did not object immediately; rather, he waited until the end of the prosecutor's closing argument to object and to request a mistrial. N.T., 9/6–12/2006, at 823. Our Supreme Court has held that such a delay does not result in waiver so long as: (1) there is no factual dispute over the content of the prosecutor's argument (*e.g.,* the argument was recorded and available for review at trial); and (2) counsel objects immediately after closing argument with sufficient specificity to give the court the opportunity to correct the prejudicial effect of the improper argument. *Commonwealth v. Adkins,* 468 Pa. 465, 364 A.2d 287, 291 (1976); *see also Commonwealth v. MacBride,* 402 Pa.Super. 624, 587 A.2d 792, 795–796 (1991), *appeal denied,* 529 Pa. 618, 600 A.2d 534 (1991).[9] Such is the case here. Accord-

---

8. We also note that in *Morgan,* 913 A.2d at 911–912, this Court has specifically held that § 6318 is not unconstitutionally vague.

9. In *Commonwealth v. Sasse,* 921 A.2d 1229, 1238 (Pa.Super.2007), *appeal denied,* 595 Pa. 706, 938 A.2d 1052 (2007), this Court found

that an objection to the prosecutor's closing argument was waived because counsel waited until the end of argument. The *Sasse* opinion does not indicate whether there was any factual dispute over the content of the argument or whether there was a contemporaneous re-

ingly, we conclude that the issue is not waived for failure to timely object. Thus, we turn to the merits.[10]

Prosecutorial misconduct does not occur unless the unavoidable effect of the comments at issue was to prejudice the jurors by forming in their minds a fixed bias and hostility toward the defendant, thus impeding their ability to weigh the evidence objectively and render a true verdict. Due to the nature of a criminal trial, both sides must be allowed reasonable latitude in presenting their cases to the jury.... Moreover, prosecutorial misconduct will not be found where comments were based on the evidence or proper inferences therefrom or were only oratorical flair.

. . .

It is settled that it is improper for a prosecutor to express a personal belief as to the credibility of the defendant or other witnesses. However, the prosecutor may comment on the credibility of witnesses. Further, a prosecutor is allowed to respond to defense arguments with logical force and vigor.

*Commonwealth v. Chmiel*, 585 Pa. 547, 889 A.2d 501, 542–544 (2005), *cert. denied*, 549 U.S. 848, 127 S.Ct. 101, 166 L.Ed.2d 82 (2006).

¶ 17 In the instant case, the record reflects that the prosecutor often stated the "Commonwealth's opinion" of defense strategy and the credibility of various witnesses, including Appellant. Similarly, the prosecutor stated that in the "Commonwealth's opinion," or the "Commonwealth's belief," the evidence pointed to guilt be-

yond a reasonable doubt. These were not improper **personal** statements of credibility or guilt; rather, they set forth the Commonwealth's position. Further, as noted above, the trial court instructed the jury not to consider the attorney's personal beliefs as evidence. Thus, we conclude that the trial court did not err in denying Appellant's motion for a mistrial.

¶ 18 We now turn to the Commonwealth's cross-appeal. The Commonwealth raises the following issue:

A. Whether the trial court committed reversible legal error by setting aside the jury's determination that Rose was guilty of criminal use of a communication facility where: (1) the jury's verdict of guilty on criminal attempt to commit unlawful contact with a minor with a finding that Rose intended to commit indecent assault was not inconsistent as a matter of law with the jury's verdict of guilty on criminal use of a communication facility; and (2) even assuming, *arguendo*, that the two verdicts were logically inconsistent, this provided no proper legal basis for the trial court to set aside the latter verdict?

Commonwealth's Brief at 2.

¶ 19 The Commonwealth argues that the trial court erred by setting aside the jury's verdict of guilt on the charge of criminal use of a communication facility. Because this issue raises a pure question of law, our review is *de novo*. *See Commonwealth v. Magliocco*, 584 Pa. 244, 883 A.2d 479 (2005).

cording thereof. *Sasse* does not control over our Supreme Court's holding in *Adkins*.

10. After counsel asked for a mistrial, the trial court denied the request in favor of a cautionary instruction that the jury is "not to consider any personal opinions or appeals to personal beliefs or anything like that in their

deliberations." N.T., 9/6–12/2006, at 824. Counsel did not object to the content or adequacy of the cautionary instruction, and did not insist that a mistrial remained the proper remedy. Given our disposition, we need not address whether the claim is waived on this basis.

¶ 20 Before we delve into the complex and confusing factual background to this claim, we will first examine the statute itself:

### § 7512. Criminal use of a communication facility

(a) Offense defined.—A person commits a felony of the third degree if that person uses a communication facility to commit, cause or facilitate the commission or the attempt thereof of any crime which constitutes a felony under [the Crimes Code or the Controlled Substance, Drug, Device and Cosmetic Act.]

18 Pa.C.S.A. § 7512(a). A "communication facility" includes a computer connected to the internet. *See* 18 Pa.C.S.A. § 7512(c). The maximum punishment for this crime is seven years. 18 Pa.C.S.A. § 7512(b).

¶ 21 Under the plain language of the statute, one essential element of the crime is that the person must use the communication facility to bring about a **felony**. *See Commonwealth v. Crabill,* 926 A.2d 488 (Pa.Super.2007). In this case, the Commonwealth charged Rose with using a computer to bring about the underlying crime of attempted unlawful contact with a minor. As noted above, the gradation of this underlying crime is equal to the gradation of the sexual crime that Rose intended to commit with the 12–year–old girl. *See* footnote 5. Thus, Rose could not be found guilty of criminal use of a communication facility unless the jury found that Rose intended to commit a felony with the 12–year–old. *Crabill.*

¶ 22 In order to guide the jury through its deliberations on these matters, the trial court created a special interrogatory verdict slip.[11] The slip reflects the trial court's apparent intent to guide the jury to a "not guilty" verdict on the communication facility charge, if the jury finds that: (1) Rose is not guilty of any attempted unlawful contact, or (2) he is guilty of unlawful contact, but his underlying sexual intent did not rise to the requisite level. The slip reads as follows:

Do you find that the defendant has proven entrapment by the Commonwealth, by a preponderance of the evidence, regarding the allegations made?

Yes _____ No _____

If you have answered "yes", you should find the defendant "not guilty" and mark the verdict slip accordingly. Once the verdict slip has been marked and signed by the foreperson, tell the court assistant you have a verdict.

If you have answered "no", you should go on to the following:

AND NOW, to wit, this 12th day of September 2006, we the twelve Jurors, find the defendant at:

Count 1 [attempted unlawful contact]

Guilty _____ Not Guilty _____

If you find the defendant "not guilty", mark Count 2 "not guilty", have the foreperson sign the verdict slip, and tell the court assistant you have a verdict.

If you find the defendant "guilty" at Count 1, Criminal Attempt to Commit Unlawful Contact with a Minor, what sexual contact did the defendant intend to have with the purported 12–year–old girl?

Indecent assault _____

Sexual Intercourse _____

**If you found the defendant intended indecent assault as the sexual contact, mark Count 2 "not guilty",** have the

---

11. So far as we can discern from the record, the trial court chose to create the slip and was responsible for its contents.

foreperson sign the verdict slip, and tell the court assistant you have a verdict.

**If you found the defendant intended sexual intercourse as the sexual contact, go on to consider a verdict at Count 2.**

Count 2 [communication facility]

Guilty _____ Not Guilty _____

/s/ _____
Foreperson

Docket Entry 17.

¶ 23 Unfortunately, this verdict slip proved to be problematic. First, for unknown reasons, the trial court placed only two sex-crime "candidates" on the slip: indecent assault (a misdemeanor) and sexual intercourse (a felony). The slip did not instruct the jury that it could find Rose guilty of count 2 if Rose intended **any** felonious contact with the 12–year–old.

¶ 24 Second, and more importantly for our purposes, the jury plainly disregarded the instructions on the slip. Specifically, the jury found Rose guilty of count 2 even though the jury found that Rose's sexual intent on count 1 was to commit indecent assault (a misdemeanor). The jury disregarded the court's instruction to find Rose **not** guilty under that circumstance. The jury filled out the slip as follows:

Do you find that the defendant has proven entrapment by the Commonwealth, by a preponderance of the evidence, regarding the allegations made?

Yes _____ No X

If you have answered "yes", you should find the defendant "not guilty" and mark the verdict slip accordingly. Once the verdict slip has been marked and signed by the foreperson, tell the court assistant you have a verdict.

If you have answered "no", you should go on to the following:

AND NOW, to wit, this 12th day of September 2006, we the twelve Jurors, find the defendant at:

Count 1 [attempted unlawful contact]

Guilty X Not Guilty _____

If you find the defendant "not guilty", mark Count 2 "not guilty", have the foreperson sign the verdict slip, and tell the court assistant you have a verdict.

If you find the defendant "guilty" at Count 1, Criminal Attempt to Commit Unlawful Contact with a Minor, what sexual contact did the defendant intend to have with the purported 12–year–old girl?

Indecent assault X

Sexual Intercourse _____

**If you found the defendant intended indecent assault as the sexual contact, mark Count 2 "not guilty", have the foreperson sign the verdict slip, and tell the court assistant you have a verdict.**

**If you found the defendant intended sexual intercourse as the sexual contact, go on to consider a verdict at Count 2.**

Count 2 [communication facility]

Guilty X Not Guilty _____

/s/ _____
Foreperson

Docket Entry 17 (emphasis added).

¶ 25 After the jury returned this verdict, the parties and the court engaged in a lengthy discussion. Ultimately, the court ruled that it would not direct the jury to return to its deliberations and change its verdict. Instead, the court set aside the verdict on count 2, on the ground that it was inconsistent with the jury's factual finding that Rose intended only indecent assault (a misdemeanor) on count 1. N.T., 9/6–12/06, at 908–914. The Commonwealth objected to this decision, but the court declined to reconsider that ruling.

¶ 26 As noted above, the Commonwealth argues that the trial court erred because inconsistent verdicts of this sort are not subject to reversal.[12] We agree.

¶ 27 "[T]he law is clear that inconsistent verdicts are permissible in Pennsylvania." *Commonwealth v. States*, 595 Pa. 453, 938 A.2d 1016, 1025 (2007). Specifically, "a mere facial inconsistency in verdicts is not a valid basis upon which to upset a conviction which is otherwise proper, since consistency in verdicts is not required." *Magliocco*, 883 A.2d at 492. For example, in *Commonwealth v. Bullock*, 590 Pa. 480, 913 A.2d 207 (2006), *cert. denied*, — U.S. —, 127 S.Ct. 2262, 167 L.Ed.2d 1103 (2007), the defendant was charged with both murder of a pregnant woman and criminal homicide of the unborn child. The jury found the defendant guilty-but-mentally-ill of third-degree murder, and but guilty-but-mentally-ill of voluntary manslaughter of the unborn child. Our Supreme Court reasoned that given the court's jury instructions, "the guilty verdict for manslaughter of an unborn child subsumed a specific finding by the jury that Appellant intended to kill [the woman]." *Id.* at 218. Moreover, "any inconsistency between this finding and the jury's failure to convict Appellant of first-degree murder of [the woman] is of no moment," because inconsistent verdicts are permissible. *Id.* at 218 n. 9. In other words, the jury was free to find that the defendant had specific intent to kill with respect to one crime, and yet fail to convict him of a different crime where that factual finding was an element. *Id.*

¶ 28 As this Court has explained:

> Inconsistent verdicts, while often perplexing, are not considered mistakes and do not constitute a basis for reversal. Rather, the rationale for allowing inconsistent verdicts is that it is the jury's sole prerogative to decide on which counts to convict in order to provide a defendant with sufficient punishment. When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

*Commonwealth v. Frisbie*, 889 A.2d 1271, 1273 (Pa.Super.2005), (citations omitted), *appeal denied*, 588 Pa. 747, 902 A.2d 1239 (2006); *see also Commonwealth v. Campbell*, 539 Pa. 212, 651 A.2d 1096, 1100 (1994) (generally, "an acquittal cannot be interpreted as a specific finding in relation to some of the evidence.").

¶ 29 One narrow exception to this rule exists where the jury specifically acquits the defendant of an underlying crime, and that underlying crime is a **necessary predicate** to a second crime. In that case, the conviction for the second crime cannot stand, "[g]iven the special weight afforded acquittals." *Magliocco*, 883 A.2d at 493; *accord Commonwealth v. Austin*, 906 A.2d 1213, 1220–1222 (Pa.Super.2006) (evidence

---

12. At first, it appears as though the Commonwealth has waived its right to relief on this claim. Rose correctly observes that the verdict slip was "agreed to by all parties." Rose's Reply Brief at 9. However, what the Commonwealth is appealing is not the verdict slip itself, but the trial court's ruling on the jury's use of the slip. The Commonwealth properly objected to this ruling.

The Commonwealth also argues that the verdicts are not inconsistent. We need not address this claim, because we will assume that they are inconsistent.

was insufficient to find the defendant guilty of second-degree murder where the Commonwealth formally charged the defendant with robbery as the underlying predicate felony, and the jury specifically acquitted the defendant of robbery), *appeal denied*, 591 Pa. 721, 920 A.2d 830 (2007); *compare Commonwealth v. Robinson*, 936 A.2d 107 (Pa.Super.2007) (acquittal for theft does not preclude a conviction for robbery, because a theft need not be completed for a robbery to occur).[13]

¶ 30 Here, the general rule permitting inconsistent verdicts applies. First, it is important to note that in contrast to *Magliocco* and *Austin*, Rose was not acquitted of anything. The jury never specifically found that Rose was not guilty of a crime, or even any component of a crime. To the contrary, the jury found that Rose was guilty of both crimes. At most, the jury chose to declare that Rose's intent on count 1 met only the level of indecent assault (a misdemeanor), rather than sexual intercourse (a felony). This choice did not preclude the jury from convicting Rose on count 2. On that charge, the jury remained free to find that Rose's intent did indeed rise to the level of sexual intercourse. *See Bullock.* The jury's decision as to count 1 may best be described as an exercise of lenity. *Frisbie.*[14]

¶ 31 Finally, we must examine whether the jury's disregard of the court's instructions on count 2 forms a basis for setting aside the verdict. We hold that it does not. Under our case law, we must consider the verdict of guilt or innocence as the controlling declaration of the jury, rather than the reasoning or factual findings by which they may have come to that verdict. *Frisbie; Campbell.* Here, we again stress that the *Magliocco* rule does not apply because Rose was not acquitted of anything.

¶ 32 Thus, the only relevant question is whether there was sufficient evidence to support the verdict on count 2. *Frisbie.* Here, there was sufficient evidence to support a verdict of guilt. The Commonwealth presented ample proof that Rose used a computer to facilitate attempted unlawful contact with a minor, with the specific intent to commit a felony (sexual intercourse) with the 12–year–old girl. We conclude that the highly regarded trial court erred as a matter of law in setting aside the verdict on count 2.

¶ 33 Accordingly, we affirm the judgment of sentence in part, remand for reimposition of the jury's verdict of guilt on count 2, and remand for further sentencing proceedings.

¶ 34 Affirmed in part and remanded in part. Jurisdiction relinquished.

13. *See also States*, 938 A.2d at 1021–1022 (for collateral estoppel purposes, where a jury's acquittal represents a specific finding of fact, the Commonwealth may not retry the defendant on crimes dependent upon that fact; however, "where an acquittal cannot be definitively interpreted as resolving an issue in favor of the defendant with respect to a remaining charge, the Commonwealth is free to commence with trial as it wishes.")

14. Indeed, the jury's decision on count 1 may well have been inspired by a desire for lenity.

During closing argument, defense counsel repeatedly warned the jury that if it found that Rose intended sexual intercourse on count 1, he would be sentenced as if he were a rapist. *See, e.g., N.T.,* 9/6–12/2006, at 758, 765, 768 ("My client is facing an incarceration for rape. And it's not here"), 778 (18–year–old who is exploring his sexuality on the internet may go to prison "for decades"); 782 ("I—hopefully have been able to stress how enormously serious this law is. The equivalent, the actual equivalent, the equal of rape.")